IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Angela J. Engles,                    :

        Plaintiff,                   :

     v.                              :        Case No.  2:16-cv-0352

                                     :
Commissioner of Social Security,         Magistrate Judge Kemp

        Defendant.                   :


OPINION AND ORDER

I.  Introduction

Plaintiff, Angela J. Engles, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for supplemental security income.  That application was filed on January 25, 2013, and alleged that Plaintiff became disabled on January 1, 2003, which date was later amended to January 25, 2013, the date the application was filed.  She had filed two prior applications for benefits as well, both of which were denied at the Administrative Law Judge level.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on August 5, 2014.  In a decision dated October 6, 2014, the ALJ denied benefits.  That became the Commissioner's final decision on February 17, 2016, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on June 27, 2016.  Plaintiff filed a statement of specific errors on August 11, 2016, to which the Commissioner responded on November 23, 2016.  Plaintiff did not file a reply brief, and the case is now ready to decide.  It is before the Magistrate Judge for decision based on the consent of

the parties and the issuance of an order of reference under 28 U.S.C. §636(c).

## II. Plaintiff's Testimony at the Administrative Hearing

Ms. Engles was 38 years old when the administrative hearing was held. She has an eleventh grade education. She testified to the following at the administrative hearing (see Tr. 49-64).

First, Plaintiff was asked about her work history. She said she had worked for several years as an assistant manager at a Papa John's pizza restaurant, but left the job due to anxiety and panic attacks. She also worked at a Wal-Mart and as a telemarketer.

Plaintiff lived with her two daughters, one of whom was an infant. She and her older daughter cared for the younger one. Plaintiff's older daughter is home-schooled. Plaintiff was able to care for her own personal needs, fixed meals occasionally, and drove to the store or to appointments.

Next, Plaintiff testified about her medications. She took Xanax, Vicodin, Trazodone, and ibuprofen for panic attacks, agoraphobia, fibromyalgia, and depression. Her medications made her tired. She took only the Xanax while she was pregnant.

Plaintiff said she could not work because she could not leave the house without her daughter and because she had panic attacks and chronic pain. She would not be able to keep a job if she had to leave work due to a panic attack. Being around people made her extremely nervous. Her panic attacks happened multiple times per day.

From a physical standpoint, Plaintiff said she could walk for five minutes, stand for five to ten minutes, and sit for half an hour or 45 minutes. Her most comfortable position was lying down. She could not concentrate for long periods of time.

## III. The Medical Records

The medical records in this case are found beginning on page

303 of the administrative record. The Court will summarize those records which pertain to Plaintiff's statements of error.

The Court begins its review with a progress note from Six County, Inc. dated July 24, 2012. Plaintiff's complaints to that agency included lack of sleep, back pain, and, perhaps, obstructive sleep apnea. The examiner commented that Plaintiff did not look tired, however. Plaintiff was encouraged to work up to being away from her daughter for longer periods of time. Her diagnoses included generalized anxiety disorder with panic attacks and probable sleep apnea. (Tr. 325-26). There is one follow-up note from 2013 indicating that Plaintiff was "bright and reactive" at that time and that her anxiety was being controlled by medication. However, her GAF was 40 at that time. (Tr. 689). Another series of notes showed that she reported increased anxiety in 2014.

Next, there are a series of treatment notes from Dr. Daou from 2012 indicating that Plaintiff suffered from fibromyalgia with pain all over and that she had been prescribed Vicodin and ibuprofen. Those notes also indicate that Plaintiff suffered from depression, anxiety, and panic attacks. (Tr. 327-41). Treatment notes from 2013 and 2014 are similar and indicate that Plaintiff reported fatigue and pain as well as psychological impairments and that she was treated with medication for anxiety and panic attacks, although her mood and affect were generally described as normal. (Tr. 366-80, 408-16). The notes also indicate that Plaintiff gave birth on April 25, 2014.

On April 22, 2013, Dr. Weaver performed a consultative physical examination. Plaintiff told him that she had been diagnosed with fibromyalgia in 2012 and was taking various medications. She was frequently achy, stiff, and in pain, and also had muscle spasms in her neck, back, arms, and legs. She had been having low back pain since 2004. Plaintiff told Dr.

-3-

Weaver that she could sit, stand, and walk for only fifteen minutes at a time and could not lift more than ten pounds. The physical examination showed that Plaintiff walked with a stiff gait and a slight limp. She had multiple trigger points in her arms and legs as well as her back and she showed some restriction in the range of motion of her shoulders, neck, and back. She had difficulty squatting. Straight leg raising was positive on the right. Her affect and mood were pleasant and appropriate. Dr. Weaver diagnosed probable chronic low back and radicular right lower leg pain and probable fibromyalgia syndrome. He thought that Plaintiff would be limited in the performance of physical activities involving sustained sitting, standing, walking, reaching, climbing, squatting, stooping, crouching, kneeling, crawling, lifting, and carrying. (Tr. 348-56).

Plaintiff also underwent a psychological evaluation, which was performed by Dr. Spindler. She told Dr. Spindler that she suffered from fibromyalgia, chronic back pain, sleep apnea, anxiety, and panic attacks. She said she had left several jobs due to panic attacks and had been given poor job performance ratings, in addition to not getting along with co-workers and supervisors. She became upset when questioned about her relationship with her daughter. She had no problem focusing during the evaluation but her mood appeared to be depressed and she seemed angry and irritable. Plaintiff reported life-long anxiety and said she did not leave the house unless her daughter went with her. She was also depressed every day. Dr. Spindler diagnosed generalized anxiety disorder, panic disorder with agoraphobia, and depressive disorder, and rated Plaintiff's overall GAF at 45. He thought that she was functioning in the low average range of intelligence, could understand job instructions (although "with her mental problems it seem (sic) unlikely that she would be able to sustain her job for very

long"), could not sustain a proper working pace and level of
attention and concentration, did not get along with others, and
could not handle routine job stress.  (Tr. 359-64).

State agency reviewers also expressed opinions about
Plaintiff's residual functional capacity.  Dr. Prosperi concluded
that Plaintiff could do a reduced range of light work with a
number of postural and non-exertional restrictions, adopting a
prior ALJ decision on that issue.  (Tr. 98-100).  Similarly, Dr.
Richardson, at Tr. 100,  adopted the prior ALJ decision as to
mental residual functional capacity.  That decision, Tr. 73-86,
found that Plaintiff was limited to less than occasional contact
with the public and frequent incidental contact with co-workers
and supervisors, with no teamwork, no fast-paced work, and no
strict production quotas.  The reviewers at the reconsideration
level, Drs. Torello and Terry, agreed.  (Tr. 111-13).

IV.  <u>The Vocational Testimony</u>

Amanda Ortman was the vocational expert in this case.  Her
testimony begins at page 64 of the administrative record.

Ms. Ortman first testified that Plaintiff's past relevant
work as a restaurant assistant manager was a light job with an
SVP of six.  That was her only past relevant work.

Mr. Breen was then asked to testify about a hypothetical
individual with Plaintiff's age, education, and work experience.
The person could work at the light exertional level except that
she required a sit and stand option every hour.  She could
occasionally climb ramps and stairs, balance, stoop, and crouch,
and could never kneel, crawl, or climb ladders, ropes, and
scaffolds.  Also, the individual had to avoid concentrated
exposure to extreme cold, heat, and vibrations, and all exposure
to heights and machinery.  Lastly, that person could have no more
than occasional contact with the public and no more than frequent
incidental contact with co-workers and supervisors and could have

no teamwork, no fast-paced work, and no strict production quotas.
Ms. Ortman said that such a person could not do Plaintiff's past
job, but someone so limited could perform light unskilled jobs
like packager, shipping and routing clerk, and office helper.
She gave numbers for such jobs in the regional and national
economies.  She also identified unskilled sedentary jobs
consistent with that residual functional capacity minus the sit-
stand option, but said that no such sedentary jobs would be
available to someone who had to change positions on an hourly
basis.  She also testified that the normal tolerance for being
off task for those jobs would be ten percent of the workday, and
for being absent, it would be less than one day per month, or six
to eight days per year at most.

V.  <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 20-
34 of the administrative record.  The important findings in that
decision are as follows.

The Administrative Law Judge found, first, that Plaintiff
had not engaged in substantial gainful activity since her
application date of January 25, 2013.

Going to the next step of the sequential evaluation process,
the ALJ determined that Plaintiff had severe impairments
including degenerative disc disease of the lumbar spine,
fibromyalgia, morbid obesity, generalized anxiety disorder, panic
disorder, social phobia, agoraphobia, and depression.  The ALJ
also found that these impairments did not, at any time, meet or
equal the requirements of any section of the Listing of
Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process,
the ALJ found that Plaintiff had the residual functional capacity
to perform work at the light exertional level except that she
required a sit and stand option every hour.  She could

occasionally climb ramps and stairs, stoop, and crouch, and could never kneel, crawl, or climb ladders, ropes, and scaffolds. Also, he had to avoid concentrated exposure to extreme cold, heat, and vibrations, and all exposure to heights and machinery. Lastly, she could have no more than occasional contact with the public and no more than frequent contact with co-workers and supervisors and could have no teamwork or fast-paced or strict production quotas.

The ALJ next concluded that Plaintiff, with these limitations, could not do any of her past relevant work. However, Plaintiff could do a number of light jobs such as packager, shipping and receiving clerk, and office helper. The ALJ further found that these jobs existed in significant numbers in the regional and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

It is important to note that, under <u>Drummond v. Comm'r of Social Security</u>, 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6), the ALJ also found that the evidence presented in connection with the current application did not support a more restrictive residual functional capacity finding than the one made by the prior ALJ. Consequently, the ALJ here adopted that RFC finding.

VI. <u>Plaintiff's Statement of Specific Errors</u>

Plaintiff raises five issues in her statement of errors: (1) the ALJ did not give proper reasons for rejecting the opinion of consultative psychological examiner Dr. Spindler; (2) the ALJ erred by not seeking clarification from consultative examiner Dr. Weaver; (3) the ALJ's credibility assessment is not supported by substantial evidence; (4) the ALJ improperly applied Acquiescence Ruling 98-4(6); and (5) the ALJ did not sustain her burden of proof with respect to the existence of jobs which Plaintiff could perform. Each of these contentions is reviewed under the

following legal standard.

    <u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A.  <u>Dr. Spindler</u>

    Plaintiff's first argument is that the ALJ provided no sound reason for rejecting the opinion of Dr. Spindler, the consultative psychological examiner.  She asserts that there was no evidence in the record to contradict his findings and that the reasons given by the ALJ for assigning only little weight to his opinion are inadequate.  The Commissioner argues that the ALJ

provided sufficient reasons to assign only little weight to that
opinion and was justified in giving greater weight to the
opinions of the state agency reviewers, both of whom found that
there had been no significant change in Plaintiff's mental
condition since the prior ALJ decision.

Although an ALJ need not provide the same level of
articulation when discounting the opinion of a consultative
examiner as that of a treating source, the ALJ must still use the
factors set forth in 20 C.F.R. §404.1527(c) in evaluating such
opinions and must provide sufficient reasoning so that the Court
may conduct a reasoned review of the ALJ's decision.  That
regulation requires an ALJ to evaluate every medical opinion and
sets forth a list of factors to be considered, including whether
the source of the opinion examined or did not examine the
claimant, see §404.1527(c)(1), and other factors such as the
supportability of the opinion, its consistency with the record,
the specialization of the source, and "other factors."  See
§404.1527(c)(3)-(6).  Further, the ALJ must not only evaluate
consultative opinions under §404.1527(c) but provide something in
the way of analysis.  Thus, "[a]lthough this explanatory
requirement [the one which applies to treating sources] does not
apply to opinions from physicians who...have examined but not
treated a claimant...the ALJ's decision still must say enough 'to
allow the appellate court to trace the path of his reasoning.'"
Stacey v. Comm'r of Social Security, 451 Fed.Appx. 517, 519 (6th
Cir. Dec. 19, 2011), quoting Diaz v. Chater, 55 F.3d 300, 307
(7th Cir. 1995).

Here, in discussing Dr. Spindler's opinion, the ALJ (after
accurately summarizing his findings), concluded that this opinion
was based "primarily on the claimant's subjective complaints from
a one-time evaluation that are unsupported by any psychological
testing."  (Tr. 31).  The ALJ also noted that Plaintiff did not
appear to exhibit any psychological symptoms during the

examination conducted by Dr. Weaver.  Finally, she explained that she gave great weight to the opinions of Drs. Richardson and Terry to the effect that Plaintiff's residual functional capacity had not changed since the prior decision because those opinions were well-supported by the evidence, and because Plaintiff was able to maintain her personal care, make meals, do chores, drive, shop, and take care of a young child.  (Tr. 31-32).

According to Plaintiff, this analysis is flawed because, first, the observations made by Dr. Spindler at the evaluation session - that Plaintiff was depressed, angry, and irritable - support his opinion apart from any subjective reports made by Plaintiff.  Second, Plaintiff contends that the fact that Dr. Spindler was an examining source favors crediting his opinion over that of the state agency reviewers, who never examined Plaintiff.

While the latter observation is true, it does not mean that the ALJ could not prefer those opinions over Dr. Spindler's.  It is important to keep in mind that one of the questions addressed by the state agency reviewers, but not by Dr. Spindler, was whether the evidence showed a change in Plaintiff's mental condition since the prior ALJ decision.  There is little evidence in the record to support such a finding.  Plaintiff was treated for her mental condition primarily by her regular physician, who prescribed medication but also noted that Plaintiff's psychological presentation was generally normal.  There is little evidence that Plaintiff sought or obtained counseling after the prior denial of her claim.  Clearly, Dr. Spindler relied heavily on Plaintiff's own description of symptoms, since the few observations he made during his evaluation do not seem to support such extreme mental limitations.  Overall, the ALJ complied with the applicable law by citing to factors contained in 20 C.F.R. §404.1527(c) and explaining why she did not give much weight to Dr. Spindler's opinion.  The Court finds no error in her decision

to give it little weight or to credit the views of the state
agency reviewers adopting the prior ALJ decision on the issue of
mental residual functional capacity.

## B. Dr. Weaver

Plaintiff presents a somewhat different argument concerning
Dr. Weaver's physical evaluation. She does not disagree with the
ALJ's decision to give great weight to Dr. Weaver's opinion.
However, Plaintiff contends that it was not clear that Dr. Weaver
believed that she could do light work because, as the ALJ noted,
he did not indicate for how long Plaintiff could perform the
various activities he described in his report. She asks that the
case be remanded for clarification on this point. In response,
the Commissioner argues that no matter what opinions are
expressed about a claimant's residual functional capacity, the
final decision on that issue is reserved to the ALJ, and that, as
with the mental residual functional capacity finding, the ALJ was
permitted to adopt the findings of the state agency reviewers,
who did not find any significant change in Plaintiff's condition
since the prior ALJ decision.

The real issue here is whether the ALJ developed the record
sufficiently to make a decision, or whether further development,
such as asking Dr. Weaver to clarify his views, was necessary.
The case law is clear that an ALJ has no duty even to order a
first consultative examination if "the record contained
sufficient information for the ALJ to make a determination."
Monroe v. Comm'r of Social Security, 2016 WL 7971330, *5
(N.D.N.Y. Dec. 29, 2016). Even when the alleged lack of clarity
is found in a treating source opinion, and ALJ need not obtain
further clarification from such a source "unless a crucial issue
is undeveloped." Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir.
2004). In that case, because the record did contain sufficient
information about the claimant's limitations based on clinical
data and observations, the ALJ had no obligation to seek

additional information about that subject.

Here, the ALJ noted that Dr. Weaver provided diagnoses of several physical impairments and made findings and observations that were used by the state agency physicians to formulate their opinions. Again, those physicians were looking for evidence that Plaintiff's condition had changed since the prior ALJ decision, and they did not find such evidence in either Dr. Weaver's report or in the other evidence of record. The ALJ considered their opinions as well as the evidence developed after they expressed them and concluded the opinions were consistent with the record as a whole. No treating source rendered a contrary opinion, and Plaintiff has not pointed to any treatment notes, findings, or tests which suggested that her condition did worsen or that the state agency reviewers did not have substantial support for their conclusions. Again, given the entirety of the record, the Court concludes that the ALJ had enough evidence upon which to formulate a physical residual functional capacity finding, and this alleged error does not provide a basis for reversal or remand.

## C. Credibility

Plaintiff's third statement of error is that the ALJ did not properly evaluate her credibility. She asserts that the ALJ applied the wrong legal standard when determining that she was not fully credible and that she also selectively interpreted the record, citing to matters which do not support the credibility finding which was made. The Commissioner responds that the ALJ provided numerous reasons for discounting Plaintiff's testimony and that these reasons are amply supported in the record.

A social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking. Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating

-12-

and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

Taking Plaintiff's arguments on the credibility issue in order, the Court first finds no evidence that the ALJ applied an incorrect legal standard. The ALJ recited the appropriate two-step standard at Tr. 27, a standard which is consistent with both 20 C.F.R. §404.1529 and the Court of Appeals' decision in Duncan v. Secretary of H.H.S., 801 F.2d 847, 853 (6th Cir. 1986). Plaintiff's argument lies more with the way in which the ALJ applied this standard, so the Court now turns to that question.

The ALJ provided these reasons for not accepting, in whole, Plaintiff's testimony about disabling symptoms: (1) the medical records do not support a finding of total disability; (2) Plaintiff's medical problems were of a long-standing nature with little evidence that they had worsened since she was working; (3) she had a poor work history; (4) her activities of daily living were inconsistent with total disability; (5) she did not consistently take her medications or follow up with recommended treatment; and (6) when she was medication-compliant, her symptoms were well-controlled. (Tr. 28-32). The ALJ's credibility determination was accompanied by a lengthy discussion of the medical records, including the fact that there were few severe objective findings at physical examinations and that her mood, affect, and judgment were generally described as normal. The ALJ also pointed out that, on a daily basis, Plaintiff was able to dress, shower, prepare meals, clean, drive, pay bills,

and care for an infant.

According to Plaintiff, the ALJ was not entitled to rely on these factors and failed to take into account other relevant factors. In support of that argument, Plaintiff asserts that the ALJ did not consider the entire checklist of factors which appear in the <u>Felisky</u> decision (although she does not state specifically which factors were omitted from the ALJ's decision), and that the ALJ erred by not taking into account the fact that any non-compliance with treatment may have related to Plaintiff's mental impairments; that a conservative course of treatment does not, by itself, negate the possibility that a claimant is disabled; and that limited daily activities do not equate to the ability to work on a sustained basis.

The Commissioner clearly has the better of this argument. As this Court said in <u>Swett v. Comm'r of Social Security</u>, 886 F.Supp.2d 656, 671 (S.D. Ohio 2012)(Newman, M.J.), "<u>Felisky</u> does not require the ALJ to engage in such an extensive analysis in every decision.... Instead, <u>Felisky</u> requires only that the ALJ consider non-medical factors in addition to the objective medical evidence" (internal citation omitted).

Further, the various factors cited by the ALJ are all appropriate considerations to be used in evaluating a claimant's credibility, and Plaintiff does not argue that the ALJ misstated the evidence upon which she relied. Essentially, Plaintiff argues that the ALJ should not have weighed these factors in the way that she did. However, this Court may not re-weigh the evidence and reach a different conclusion as to credibility if the ALJ (as occurred here) applies the correct legal standard, cites appropriate factors, and reaches a conclusion that a reasonable person could have reached based on the evidence in the case. As this Court has often said, "[b]ecause an ALJ is charged with observing a witness's demeanor, [her] findings on credibility must be accorded great weight and deference," <u>Baker</u>

-14-

v. Comm'r of Social Security, 2014 WL 3689231, *6 (S.D. Ohio July 24, 2014), and it is simply not this Court's job to re-weigh the evidence.  The Court therefore finds no merit in Plaintiff's third statement of error.

### D.  Acquiescence Ruling 98-4(6)

Plaintiff's next argument is that the ALJ did not properly apply Acquiescence Ruling (AR) 98-4(6).  That ruling, which is applicable within the Sixth Circuit, states that the Social Security Administration "may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding of the claimant's residual functional capacity."  The ALJ applied the ruling in this case and adopted the prior ALJ's residual functional capacity finding because there was no evidence that Plaintiff's circumstances had materially changed since the prior decision was rendered.  According to Plaintiff, the ALJ erred because the evidence showed such changed circumstances.

This argument incorporates the prior arguments concerning the proper interpretation of the consultative examiners' opinions and the credibility finding made by the ALJ.  Because it makes no new arguments, and because the Court has found no merit in those three claims, Plaintiff's fourth statement of error provides no basis for granting relief.

### E.  The Vocational Testimony

The final argument contained in Plaintiff's statement of specific errors relates to the vocational testimony.  Plaintiff asserts that the ALJ did not properly evaluate the testimony about the job of office helper because there is a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles concerning how frequently an office helper interacts with others.  That, according to Plaintiff, violates

Social Security Ruling 00-4p and requires a remand.

There are at least two reasons why this argument is unavailing.  First, as the Commissioner points out, the ALJ asked the vocational expert whether her testimony was "consistent with the information found in the [DOT]?" (Tr. 68-69).  She responded, "Yes.  And it's also based on my professional experience." (Tr. 69).  That testimony was sufficient to allow the ALJ to rely on her answers, and the question was sufficient to satisfy the duty imposed by SSR 00-4p, which states that "[a]t the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."  Further, the Commissioner makes a cogent argument (although one that the Court need not accept in order to resolve this issue) that any discrepancy between the DOT's description of the duties of an office helper and Plaintiff's need to avoid significant interaction with others is not immediately apparent.  The Court also notes that to the extent there was a discrepancy, the vocational expert was entitled to rely on her own experience - SSR 00-4p specifically states that "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict" - and the ALJ was entitled to rely on that explanation.

Additionally, office helper was only one of three representative jobs which the vocational expert identified at the light exertional level as being within Plaintiff's physical and mental capabilities.  If that job were eliminated, the jobs of packager and shipping and routing clerk remained, and the vocational expert testified that, together, there were approximately 300,000 such jobs in the national economy. Consequently, any error concerning the office helper job is clearly harmless.  See, e.g., Hannon v. Comm'r of Social Security, 2013 WL 3568272, *6 (S.D. Ohio July 11, 2013)(Kemp, M.J.), adopted and affirmed 2013 WL 4434905 (S.D.Ohio Aug. 16,

2013), finding harmless error when "any error in [the ALJ's] decision made no difference in the way she decided the case." This issue, like the previous four, provides no basis for reversal or remand.

## VII. <u>Decision</u>

Based on the above discussion, Plaintiff's statement of errors (Doc. 11) is overruled. The Commissioner's decision denying benefits is affirmed. The Clerk is directed to enter judgment in favor of Defendant and to terminate this case.


<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge